Sarah A. Young v. Commissioner.
Young v. Commissioner
Docket No. 5557.
United States Tax Court
1945 Tax Ct. Memo LEXIS 50; 4 T.C.M. (CCH) 982; T.C.M. (RIA) 45335; October 30, 1945
Patrick J. Ryan, Esq., W-2681, First Nat. Bank Bldg., St. Paul, Minn., for the petitioner. Lester M. Ponder, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves a deficiency in income taxes for the calendar year 1939 in the amount of $1,320.22. The issues are: (1) petitioner's cost basis for 900 shares of the common capital stock of The Dispatch Printing Company, and (2) whether the amount of $24,706.93, which petitioner received for such shares in 1939, is taxable as a distribution in liquidation or as a longterm capital gain. The case was submitted upon oral testimony and exhibits. Findings of Fact Petitioner is an individual residing at No. 389 Dayton Avenue, St. Paul, Minnesota. Her Federal income *51 tax return for the period involved was filed with the collector of internal revenue for the district of Minnesota. Petitioner was employed by The Dispatch Printing Company from April 1889 to February 1923, in varying capacities as stenographer, cashier and secretary, at a salary ranging from $5 per week at commencement of her employment to $45 at the termination of her services. The Dispatch Printing Company was a corporation engaged in publishing the St. PaulDispatch and St. Paul Pioneer Press. The newspapers were under the active management of George Thompson who, with his wife, owned approximately all of the capital stock of the corporation. On January 15, 1913, George Thompson delivered to the Capital Trust Company 5 certificates for 4 shares each of the capital stock of The Dispatch Printing Company to be held and disposed of under an escrow agreement between petitioner and Thompson. The agreement provided that the Trust Company should deliver 1 certificate for 4 shares on January 1, 1914, if petitioner should continue in the employ of the corporation until that date, with a similar provision covering the delivery of a certificate on January 1 of each of the 4 following years. *52 Petitioner continued in the employ of the corporation and received a certificate on January 1 of each of the 4 following years. It was stated in the agreement that: "In view of her previous service with The Dispatch Printing Company, and in belief that such service and our friendly relations shall continue as in the past, I, George Thompson, desire that Sarah A. Young should have an interest in that corporation, and am willing to give her an interest therein, upon terms and conditions, all as is hereafter stated, that is to say: * * * "This is not intended to obligate the said Young to continue her service with The Dispatch Printing Company, nor The Dispatch Printing Company to continue her in its employ, and the provision for the delivery of stock to said Young and the payment of dividends to her is intended to be effective only while she continues in the service." On January 7, 1917, George Thompson died leaving a will in which petitioner was bequeathed and later received 70 shares of capital stock of The Dispatch Printing Company. In the Federal estate tax return for the Estate of George Thompson the 1,418 shares of The Dispatch Printing Company owned by the decedent were *53 returned at an aggregate value of $141,800, or $100 per share. This return separately reported the value of an interest in the stock of the Itasca Paper Company, held by C. K. Blandin as trustee, in the amount of $23,633.33, or $16.66 per share. Such return was signed by "Sarah A. Young as Agent for Abigail I. Thompson", who was the executrix of the estate. The stock of The Dispatch Printing Company had been appraised by Mr. E. H. Bailey, President of the First National Bank of St. Paul, and Mr. A. M. Robertson, treasurer of the Twin City Rapid Transit Company, at $100 per share. The respondent increased the value of The Dispatch Printing Company shares to $155 per share. He also increased the value of the stock of the Itasca Paper Company to $24.66. These increased valuations were accepted by the executrix and the additional estate tax liability resulting therefrom was paid. The authorized capital of The Dispatch Printing Company in 1917 was 3,000 shares of the par value of $50 per share. Some years later its capital was increased to 30,000 shares and new certificates were issued at a ratio of 10 new for 1 old share. For the petitioner's original 90 shares she received 900 of the *54 new shares. The surplus of The Dispatch Printing Company for the years 1913 to 1918 was as follows Surplus Per
Total
Surplus Per
Book Surplus
Books Beg.
Amended
Surplus
Books End
Per Revenue
Year
of Year
Increase
Available
of Year
Agent's Report
1913
$393,549.87
$ 99,727.29
$493,277.16
$455,777.16
$193,756.62
1914
455,777.16
98,257.82
554,034.98
509,034.98
1915
509,034.98
124,693.34
633,728.32
588,728.32
1916
588,728.32
198,531.63
787,259.95
437,259.95
1917
437,259.95
123,728.64
560,988.59
485,988.59
256,387.87
1918
485,988.59
114,886.91
600,875.50
537,875.50
306,071.27
Several years later, at a date not appearing, The Dispatch Printing Company sold its newspapers. Its name was changed to St. Paul Publishers, Inc. The next transaction appearing in the record is a letter, dated July 13, 1939, addressed to petitioner and signed by C. K. Blandin, president. This letter reads as follows: After several years of intensified effort to make the investment portfolio coming out of the sale of the Dispatch Printing satisfactory, I have concluded for the best interest of all to liquidate the holdings. You will *55 recollect that that investments have been held in the St. Paul Publishers, Incorporated. "The writer indirectly holds over 95% of the stock of St. Paul Publishers, Incorporated, and I agree to take my share by accepting the assets remaining in the Corporation after the minority stockholders have been paid in cash. "This plan will make it unnecessary to sell the securities in a thin market, which might decrease your present equity. "The assets consist of cash and marketable securities. The securities will be appraised as of July 22, 1939, and verified as being correct by Shannon & Byers, Certified Public Accounts. [sic] The equity per share at the market will be approximately $24.00. Market fluctuations between now and July 22nd may change the estimate somewhat. "Kindly endorse your stock certificate to the St. Paul Publishers, Incorporated, and forward to this office address for payment. This will be made as soon as the appraisers have finished their work." Under date of September 27, 1939, petitioner replied to the aforementioned communication as follows: "Recently, St. Paul Publishers, Incorporated, advised me that some time in the past it had invested the proceeds *56 of the sale of the property of the Dispatch Printing Company in various stocks and bonds which had greatly depreciated in value, and advised me that it proposed to liquidate and pay over to me by way of liquidation of my 900 shares of stock approximately $24.00 a share, that being substantially the equivalent of pro rata shares of the value of those securities. "This offer I have declined upon the ground that the investments so made without by knowledge or consent were illegal. "St. Paul Publishers, Incorporated, now advise me that it nevertheless proposes to go forward with liquidation upon the basis which I have rejected and in order to do so proposes to liquidate 3.05% of its capital stock, that is to say, 900 shares; that the Blandin Paper Company, the owner of 96.95% of the stock of the company, is to waive receipt of any part of said dividend and agree that all of the same shall be applied to the retirement of my stock. I have no doubt that the Blandin Paper Company will accomplish some proper business purpose in 50 voting its stock, and I have no desire to be obstructive. I make no objection to the payment of said 3.05% of said assets to me in cash rather than in the pro *57 rata share of said depreciated investments. My sole objection is that I am entitled to receive a much larger amount of cash, to wit, approximately $75.00 per share. But, in order to permit the company to carry out its objective, I agree to deliver my stock accepting said specified amount with the express reservation and upon the understanding and agreement that I will have and retain against the company, Mr. Blandin, Blandin Company, Blandin Development Company and the Blandin Paper Company any and all right which I now have to recover the amount claimed by me less the amount now to be paid in exactly the same manner and measure as if I continued to be the holder of my said shares. "Of course I understand that neither the St. Paul Publishers, Incorporated, Mr. Blandin or any of the above described companies admit by participation in the plan of action described herein any liability to me, and I understand that they are not to be prejudiced thereby in respect of any defense to my said claim which they or any of them may now have." The respondent in his deficiency notice for the taxable year 1939 explained the adjustments, material here, as follows: "(a) On January 1st of each *58 of the years 1914 to 1918 inclusive, you received four shares of stock of The Dispatch Printing Company as compensation for services rendered and pursuant to an agreement executed by and between you and George Thompson under date of January 15, 1913, no part of the value of which was reported by you as gross income for income tax purposes in any of said years. Said twenty (20) shares of stock were later converted into 200 shares and the corporate name was subsequently changed to St. Paul Publishers, Inc. It is held that said 200 shares of stock of St. Paul Publishers, Inc., had a basis of zero for computing gain upon the disposition thereof in 1939. "On January 7, 1917, you received seventy (70) shares of stock of The Dispatch Printing Company as a bequest under the will of George Thompson, said stock later being converted into 700 shares of St. Paul Publishers, Inc. It is held that the value of said 70 shares of stock on the date of acquisition was $155.00 per share, or $10,850.00, which constitutes your basis for computing gain upon the disposition thereof in 1939. "All of the above-mentioned stock, i.e., 900 shares of the stock of St. Paul Publishers, Inc., was retired in 1939, *59 and you received therefor the sum of $24,706.93. It is further held that you thereby realized gain measured by the difference between the $24,706.93 received on retirement thereof and the aggregate basis of $10,850.00, or $13,856.93, which latter amount is includible 100 percent in your gross income for the year 1939. * * *" The 20 shares of the old stock of The Dispatch Printing Company transferred to petitioner pursuant to the contract, dated January 15, 1913, were received as compensation for services rendered by her to such corporation. The fair market value of said shares on the respective dates of their receipt, i.e., January 1, 1914 to January 1, 1918, inclusive, was $155 per share. The fair market value of the 70 shares of the old stock of The Dispatch Printing Company received by petitioner as a bequest from the estate of George Thompson was $155 per share. Opinion The respondent, by an amended answer, pleaded an estoppel against petitioner, claiming a basis in excess of zero respecting the 20 shares of the capital stock of The Dispatch Printing Company received during the years 1914 to 1918, inclusive. The premise upon which the estoppel is based is that such shares *60 were received as compensation for services constituting taxable income which petitioner failed to report in the respective years of receipt. On this issue the respondent has the burden of proof. Helvering v. Brooklyn City R.R. Co., 72 Fed. (2d) 274. The evidence presented by respondent to establish this affirmative defense consisted merely of showing that the records of respondent disclosed that petitioner had filed no income tax returns for the calendar years 1914, 1915, 1916 and 1917. The evidence showed that a return had been filed for the year 1918, which had been destroyed and its contents were not disclosed. During the years 1914 to 1917, the personal exemption to a single individual was $3,000. [1] A single individual taxpayer was not required to file a Federal income tax return unless his gross income exceeded the personal exemption allowed. Petitioner testified that she was first employed by The Dispatch Printing Company in 1889 at a salary of $5 per week; that her raises in salary were slow; and when she retired in 1923 her salary was $45 per week. She was unable to state what her weekly salary was in the years 1914 to 1918, inclusive. She further testified *61 that she always complied with the Federal income tax law and field returns when required. A general presumption exists that a person complies with the law until the contrary is shown. United States Bank v. Dandridge, 12 Wheat. 64, 68. It is clear unless the value of the 20 shares of The Dispatch Printing Company stock was greatly in excess of $155 per share, found by respondent to be its value in January 1917, assuming her salary in those years to have been $45 per week, her gross income would be less than the personal exemption of $3,000. Since respondent has not shown petitioner received sufficient income to require her to file a return in the years 1914 to 1918, the failure to file returns in those years furnishes no basis for applying the rule of estoppel. What then was the fair market value of the shares of The Dispatch Printing Company on January 1, 1914 to 1918, inclusive? The burden of establishing this fact was upon petitioner. Owing to the lapse of time and the company having been sold many years ago, the petitioner's proof was very meager. The Dispatch Printing Company was a close corporation, and no evidence of any sales of the stock at a date near the critical *62 dates was offered. The proof consisted of balance sheets for the years 1913 and 1917; a schedule setting forth the surplus as shown by the books and adjusted by respondent. No income or profit and loss statements were presented. Petitioner relied heavily on a statement contained in the escrow agreement of January 15, 1913 to the effect that the company's assets and good will were valued at $1,500,000 although the capital was only 3,000 shares of $50 par value. We do not think such evidence has sufficient probative force to support the burden of petitioner upon the question of valuation. The balance sheets and other evidence point the other way. Shares of stock of The Dispatch Printing Company were valued as of January 7, 1917 for estate tax purposes. The appraisers for the estate fixed the value at $100 a share, which was increased by the respondent to $155 per share. Since the record indicates that there was little difference in the book value of the shares in the years 1914 to January 1917, we have found the fair market value of the 20 shares on the critical dates of January 1, 1913 to January 1, 1918 to be $155 per share. It may be the value of the shares in those years was in excess *63 of that figure, but petitioner has failed to establish that fact and we have made our finding of fact as to its value on the best evidence available. We think it clear that these 20 shares were transferred to petitioner in consideration of her services and therefore constituted compensation in the respective years and subject to income taxes. Being compensation, the fair market value, which we have found to be $155 per share, is the petitioner's cost basis for determining her gain or loss on its disposition. As to the 70 shares which petitioner received under the will of George Thompson, deceased, the respondent contends petitioner is estopped from claiming a greater cost basis than the $155 per share at which they were valued for estate tax purposes. The alleged basis of the estoppel is the fact petitioner signed the Federal estate tax return as agent for the executrix of the Estate of George Thompson. Since the record contains no adequate proof to sustain a value as of January 7, 1917 greater than the value at which the shares were appraised for estate tax purposes, it is not necessary to discuss this asserted estoppel. *64 The Regulations provide that the basis for determining gain or loss on property transmitted at death is the fair market value at the date of death of the decedent as appraised for estate tax purposes. [2] We have found as a fact that petitioner's cost basis for the 70 old shares of The Dispatch Printing Company stock was $155 per share. Petitioner argues that we should add to the value of The Dispatch Printing Company shares the amount of $24.66 per share to cover the interest in the shares in the Itasca Paper Company held by C. K. Blandin as trustee. This interest was separately valued in the estate tax proceedings. The evidence shows that petitioner separately disposed of her interest at a time not disclosed. We find no evidence in the record that would justify our increasing the value of The Dispatch Printing Company shares by reason of the petitioner's interest in the Itasca Paper Company. In 1939 petitioner received for the 90 old shares, exchanged for 900 new shares, the sum of $24,706.93, which respondent has taxed at 100 per cent as having been received as a distribution in partial liquidation. In his deficiency notice the respondent *65 explained this adjustment as follows: All of the above-mentioned stock, i.e., 900 shares of the stock of St. Paul Publishers, Inc., was retired in 1939, and you received therefor the sum of $24,706.93. * * * The only evidence in the record bearing on this issue is the 2 letters exchanged between petitioner and the president of St. Paul Publishers, Inc., to which The Dispatch Printing Company had changed its name. The letter of the president merely outlines a proposed plan. What the corporation, in fact, did with respect to a complete or partial liquidation has not been shown. What was actually done by the corporation controls the tax consequences to the stockholder. Gus T. Dodd, 46 B.T.A. 7; affd., 131 Fed. (2d) 382. Cf. Alpers v. Commissioner, 126 Fed. (2d) 58. If the petitioner's shares were merely retired, as determined by the respondent, then clearly there was a partial liquidation as defined in section 115 (i), and a gain taxable as a short-term capital gain as required by section 115 (c) of the Internal Revenue Code. Hamilton Allport, 4 T.C. 401. We do not think the petitioner has sufficiently established there was a *66 complete and final liquidation of the corporation entitling her to the benefits of the provisions of section 117 (b). Respondent is sustained upon this issue. Decision will be entered under Rule 50. Footnotes
1. Merten's Law of Federal Income Taxation, Vol. 1, p. 26.↩
2. REGS. 103, Sec. 19.113 (a)(5)-1 (c).↩